IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JULIA ABRUZZESE                          :          CIVIL ACTION
                                         :
        v.                               :
                                         :
MICHAEL J. ASTRUE[1]                      :
Commissioner of Social Security          :          NO.  06-1958


## REPORT AND RECOMMENDATION

L. FELIPE RESTREPO                                           May 14, 2007
UNITED STATES MAGISTRATE JUDGE


        Plaintiff, Julia Abruzzese, filed this action pursuant to 42 U.S.C. § 405(g) for review of

the final decision of the Commissioner of Social Security ("Commissioner"), who found that she

was not entitled to Social Security Insurance ("SSI") benefits under the Social Security Act

("Act"), 42 U.S.C. §§ 401-433.  Presently, before the Court are Plaintiff's Brief and Statement of

Issues in Support of Request for Review and Motion for Summary Judgment and Defendant's

Response to Request for Review by Plaintiff.  For the reasons which follow, Plaintiff's motion

summary judgement should be granted insofar as she requests a remand and the Commissioner's

motion should be denied.


### -1-    PROCEDURAL HISTORY

        Plaintiff applied for SSI on February 26, 2001.  (R. at 21.)  The state agency denied her

application, and plaintiff requested a review by an ALJ on August 14, 2002.  (R. at 21.)  On

---

[1]  Michael J. Astrue became the Commissioner of the Social Security Administration
effective February 12, 2007, to succeed Jo Anne B. Barnhart.  Under Fed.R.Civ.P. 25(d)(1) and
24 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as defendant in this action.

September 27, 2002, the ALJ rendered her decision denying SSI.  (R. at 21.)  Thereafter, plaintiff

requested a review of the ALJ's decision by the Appeals Council.  (R. at 21.)  The Appeals

Council issued an order of remand due to the new evidence concerning her mental status.  (R. at

21, 93.)  The ALJ rendered a second decision denying SSI on August 4, 2004.  (R. at 21-31.)

Plaintiff again requested an evaluation by the Appeals Council which denied plaintiff's request

for review (R. at 16.)  Consequently he ALJ's decision "is the final decision of the

Commissioner," (R. at 10-12).  See sims v. Apfel, 530 U.S. 103, 107 (2000).

This action was brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial

review of the final decision of the Commissioner.

## -2-    ALJ'S FINDINGS OF FACTS

The ALJ made the following findings in his decision dated August 4, 2004:

1.  The claimant met the non-disability requirements for a period of disability and
Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act
and was insured for benefits only through December 31, 1997.

2.  The claimant has not engaged in substantial gainful activity since the currently
alleged onset of disability, February 26, 2001.

3.  The claimant's hand problems and depression are considered "severe" based
on the requirements of the Regulations 20 C.F.R. § 416.920(b).

4.  These medically determinable impairments do not meet or medically equal one
of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  I find mild limitations on daily activities, moderate limitations upon social
functioning, and mild limitations upon concentration, persistence, and pace.
There have been no episodes of decompensation.

6.  I find the claimant's allegations regarding her limitations are not totally
credible for the reasons set forth in the body of the decision.

7.  The claimant had the following residual functional capacity: she can lift, carry,

push, and pull up to 20 pounds at a time and up to ten pounds frequently; walk or
stand for up to six hours per workday; and sit for up to six hours per workday
(except no fine handling or frequent manipulation but only from February 2002
through May 2002).  She should not deal with the public or work in close
proximity with co-workers.

8.  The claimant was unable to perform any of her past relevant work ( 20 C.F.R.
§ 416.965).

9.  The claimant is a "individual closely approaching an advanced age" (20 C.F.R.
§ 416.963).

10.  The claimant has 'a limited education' (20 C.F.R. § 416.964).

11.  The claimant has no transferable skills from any past relevant work and/or
transferability of skills is not an issue in this case ( (20 C.F.R. § 416.968).

12.  The claim has the residual functional capacity to perform a significant range
of light work (20 C.F.R. § 416.967).

13.  Although the claimant's exertional limitations did not allow her to perform
the full range of light work, using Medical-Vocational Rule 202.18, 202.19,
202.11, and  202.12 as a framework for decision-making, there are a significant
number of jobs in the national economy that she could perform..  Examples of
such jobs include work as an internal order clerk (400 jobs locally and 100,000
jobs nationally) and a file clerk (3,700 jobs locally and 443,000 jobs nationally).

14.  The claimant was not under a "disability," as defined in the Social Security
Act, at any time through the date of this decision (20 C.F.R. § 416.920(g)).

(R. at 29-30.)  Accordingly, the ALJ concluded that Plaintiff was not entitled to SSI benefits

under sections 1602 and 1614(a)(3)(A) of the Social Security Act. (R. at 31.)

## -3-   PLAINTIFF'S CLAIMS

In support of her motion for summary judgment, plaintiff alleges the following grounds

for relief: **1)** the ALJ failed to follow the requirements of Social Security Ruling 00-4p, Pl.'s Br.

at 4-6; see also Statement of Facts and Narrative ("SOFN") at 8-9; **2)** the ALJ's finding that

plaintiff's statements concerning her impairments and their effect on her ability to work are not

totally credible is not supported by substantial evidence, Pl.'s Br. at 6-8; see also Pl.'s SOFN at

at 5-8; **3)** the ALJ committed reversible error of law by failing to find that degenerative disc

disease of the cervical spine and an injury to plaintiff's right knee were not severe impairments,

Pl.'s Br. at 8-11, see also Pl.'s SOFN at 3-5, **4)** the ALJ's finding that plaintiff has the residual

functional capacity ("RFC") to perform light work was not supported by substantial evidence,

Pl.'s Br. at 11-12, see also Pl.'s SOFN at 8-9, and **5)** the Commissioner's finding that plaintiff

was not under a disability was not supported by substantial evidence, Pl.'s Br. at 11-12.[2]

## -4-   STANDARD OF REVIEW

The role of this court is to determine whether there is substantial evidence supporting the

Commissioner's final decision.  42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552

(3d Cir. 2005); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The factual findings of the

Commissioner must be accepted as conclusive, provided that they are supported by substantial

evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g));

Rutherford, 399 F.3d at 552.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citing

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Reefer v. Barnhart, 326 F.3d 376,

379 (3d Cir. 2002).  It is not the role of the court to review the Commissioner's decision **de novo**

or re-weigh the evidence.  See e.g. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## -5-   DISCUSSION

The Social Security Administration is authorized to pay SSI, under the Act, to persons

---

[2]  Plaintiff does not present any claims involving the new evidence of mental impairments presented at the second hearing before the ALJ in her Brief and Statement of Issues in Support of Request for Review and Motion for Summary Judgment.

who have a disability.  See Barnhart v. Thomas, 540 U.S. 20, 21 (2003).  The Act defines

disability in terms of the effect an impairment has on a person's ability to function in the

workplace.  Id. at 21-22.

To establish a disability under the Act, plaintiff must demonstrate that there is some

"medically determinable basis for an impairment that prevents him from engaging in any

'substantial gainful activity' for a statutory twelve-month period."  Fargnoli v. Massanari, 247

F.3d 34, 38-39 (3d Cir. 2001) (citing Plummer 186 F.3d at 427).  A plaintiff can establish such a

disability in either of two ways: 1) by producing medical evidence that one is disabled **per se** as a

result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P,

App. 1 (2000), or 2) by demonstrating an impairment of such severity as to be unable to engage

in any kind of substantial gainful work which exists in the national economy.  Heckler v.

Campbell, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated regulations ("the regulations")

establishing a five-step sequential evaluation to determine whether a claimant is disabled.[3]  A

---

[3]   These steps are summarized as follows:

Step 1: If the claimant is working or doing substantial gainful activity, a finding of not
disabled is directed.  If not, proceed to Step 2.  20 C.F.R. § 404.1520(b).

Step 2:  If the claimant is found not to have a severe impairment which significantly
limits his or her physical or mental ability to do basic work activity, a finding of not disabled is
directed.  If there is a severe impairment, proceed to Step 3.  20 C.F.R. § 404.1520(c).

Step 3:  If the impairment meets or equals criteria for a listed impairment or impairments
in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  If not,
proceed to Step 4.  20 C.F.R. § 404.1520(d).

Step 4:  If the claimant retains the residual functional capacity to perform past relevant
work, a finding of not disabled is directed. If it is determined that the claimant cannot do the kind

claimant satisfies his/her burden at step four by showing an inability to return to his past relevant work.  Rutherford, 399 F.3d at 551.  Once this showing is made, the burden shifts to the Commissioner to demonstrate that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the national economy.  20 C.F.R. § 404.1520; see Rutherford, 399 F.3d at 551.

### -5- (A)    SEVERITY CHALLENGE

Plaintiff argues that the ALJ committed reversible error when she found that plaintiff's degenerative disk disease of the cervical spine and an impairment of plaintiff's right knee did not constitute severe impairments.  Pl.'s Br. at 8.  Specifically, plaintiff contends that the ALJ's failure to classify these impairments as severe was not supported by substantial evidence.  Id.

An impairment is considered severe if it "significantly limits [the individual's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c).  The regulations define basic work activities as "the abilities and aptitudes necessary to do most jobs."  Woodson v. Barnhart, 2004 WL 1102363, at *6 (E.D. Pa. May 11, 2004) (quoting 20 C.F.R. § 416.921(b)).  Examples of basic work activities include, inter alia: "[p]hysical functions such as walking,

---

of work he or she performed in the past, proceed to Step 5.  20 C.F.R. § 404.1520(f).

  Step 5:  The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant is or is not disabled.  20 C.F.R. § 404.1520(g).

See also Knepp v. Apfel, 204 F.3d 78, 83-84 (3d Cir. 2000) (citing Santise v. Schweiker, 676 F.2d 925, 926-27 (3d Cir. 1982)).

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §

404.1521(b)(1); see Woodson, 2004 WL 1102363, at *6.

With respect step two of the sequential evaluation, the Third Circuit has stated that

although the substantial evidence standard applies that "[t]he burden placed on an applicant at

step two is not an exacting one." McCrea v. Commissioner of Social Security, 370 F.3d 357, 360

(3d Cir. 2004); see Mason v. Barnhart, 2004 WL 3019319, at *1 (E.D. Pa. Dec. 28, 2004). The

Third Circuit has explained: "Although the regulatory language speaks in terms of 'severity,' the

Commissioner has clarified that an applicant need only demonstrate something beyond a slight

abnormality or a combination of abnormalities which would have no more than a minimal effect

on an individual's ability to work." McCrea, 370 F.3d at 360; see Mason, 2004 WL 3019319, at

*1.

Thus, "[t]he step-two inquiry is a de minims screening device to dispose of groundless

claims." Newell v. Commissioner of Social Security, 347 F.3d 541, 546 (3d Cir. 2003). "If the

evidence presented by the claimant presents more than a 'slight abnormality,' the step-two

requirement of severe is met and the sequential evaluation process should continue." Id.

"Reasonable doubts on severity are to be resolved in favor of the claimant." Id.

In support of her finding that plaintiff's cervical spine condition was not severe, the ALJ

properly found that Dr. Ira Rubenfeld, the state examiner for the Pennsylvania Bureau of

Disability Determination, evaluated the plaintiff in May 2001 and determined that she had a full

range of motion in her neck. (R. at 24; 285.) Although the ALJ observed that Dr. Beverly

Hershey's study of an MRI of plaintiff's cervical spine in June 2001 revealed "[d]egenerative

disc disease with bilateral neural foraminal stenosis C4-5" and "[m]ild bulging disc C5-6" (R. at

24; 218.), she correctly noted that the record is silent concerning her cervical spine until she fell

on ice on December 8, 2002, injuring her neck, back, and left elbow.  X-rays of plaintiff's

thoracic spine taken immediately after the fall revealed only "mild degenerative arthritis and

degenerative disk disease."  (R. at 24; 454.)  Additionally, the ALJ accurately determined that

there were no pertinent complaints of cervical pain in the records of her treating physician Dr.

Baldino after February 2003.

Similarly, the ALJ properly explained and supported her finding that plaintiff's knee

impairment was not severe.  (R. at 24.)  In the course of her explanation addressing why

plaintiff's knee impairment was not severe, she pointed to the following evidence contained in

the record: 1) Dr. Larry Caputo's April 1999 evaluation finding that the x-ray of plaintiff's right

knee were "normal"  (R. at 238.); 2) Dr. Rubenfeld's 2001 report finding that plaintiff had full

range of motion in both knees  (R. at 284.); 3)  Dr. Lillian Stern's medical opinion from a August

2001 session stating  x-rays of plaintiff's knees and found them to be "normal extremities" (R. at

334.); Dr. Cynthia Miller's February 2002 x-ray reading finding that the four views of plaintiff's

right knee were "normal." (R. at 461.); and 5) Dr. Miller's evaluation of an MRI revealing that

plaintiff's knee impairments were limited to a "small joint effusion" and a "cyst" but there was

no meniscal tear and the ligaments were normal.  (R. at 368.)

Further, with respect to the knee impairment, the ALJ correctly noted that several of the

doctors who found that plaintiff had a knee impairment did not provide observations supporting

their diagnoses or medical observations.  (R. at 345 (addressing Dr. Attanasio's diagnosis of

chondromalacia); (R. at 414) (addressing Dr. Baldino's diagnosis of degenerative joint disease);

369 (addressing Dr. Salvo's diagnosis of right knee synovitis); (R. at 374) (addressing Dr.

Nappi's observation of changes to the right knee)).  In addition, x-rays taken in April 2003 of

plaintiff's right knee after a slip-fall incident at K-Mart were "normal."  (R. at 449.)  Although

initial examinations showed tenderness, crepitus, and limited range of motion, the ALJ correctly

noted that the medical records showed that these signs began diminishing as of June 2003 and

reports were silent as of August 7, 2003.  (R. at 425-29.)

Thus, contrary to plaintiff's contention, the ALJ's finding that plaintiff's cervical spine

and knee impairments were non-severe impairments is supported by substantial evidence in the

record.  Woodson, 2004 WL 1102363, at *6.

### -5- (B)    LIGHT WORK

Plaintiff asserts that the ALJ's RFC determination was not supported by substantial

evidence because he failed to include her medical impairments into his RFC determination.  Pl.'s

Br. at 11-12.

The RFC determination "is a function-by-function assessment based upon all relevant

evidence of an individual's ability to perform worked-related activities."  See Social Security

Ruling[4] ("SSR") 96-9p, 61 Fed. Reg. 34,478 (Jul. 2, 1996).  In making his RFC determination,

the ALJ has the responsibility of evaluating the credibility of plaintiff's subjective claims

pursuant to Social Security Ruling 96-9p and 20 C.F.R. § 404.1529.  See Van Horn v.

Schweiker, 717 F.2d  871, 873 (3d Cir. 1983); Duncan, 786 F.Supp. at 470.  Furthermore,

although the opinions of medical sources must be considered and evaluated, the responsibility for

deciding a claimant's RFC "is reserved for the Commissioner," see 20 C.F.R. § 404.1527(e)(2),

---

[4] Social Security Rulings are binding on all components of the Social Security
Administration."  Walton v. Halter, 243 F.3d 703, 708 (3d. Cir. 2001); 20 C.F.R. § 402.35(b)(1).

and rests with the ALJ at the administrative hearing level, see id. § 404.1546.

In the present case, the ALJ found that plaintiff had the ability to do light work, finding

that plaintiff "can lift, carry, push, and pull up to 20 pounds at a time and up to ten pounds

frequently; walk or stand for up to six hours per workday; and sit for up to six hours per workday

(except no fine handling or frequent manipulation but only from February 2002 through May

2002)." (R. at 30.)  According to the regulatory provision:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities. If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Explaining her RFC determination, the ALJ wrote the following:

> I am aware of the July 2001 opinion from a State agency psychologist that the
> claimant has a nonsevere anxiety impairment (Exhibit 15F).  Regardless of this,
> the medical expert had the opportunity to review the entire record and observe the
> claimant at the hearing.  Thus, I give more weight to his opinion.  I am also aware
> of the May 2001 opinion from Dr. Rubenfeld, an internist, and the February 2002
> assessment of Dr. Attanasio, her family practitioner, that the claimant would be
> incapable of even sedentary work (Exhibits 13F and 20F).  On April 30, 2003, Dr.
> Baldino, a general practitioner, concluded that she had a "serious permanent
> debility" (Exhibit 37F).  None of these physicians is an orthopedist, a neurologist,
> or a physiatrist.  Moreover, the objective medical record does not support the
> limitations they have articulated, and I will not give much weight to their opinions
> (416.927).[5]

---

[5]  With regard to the medical expert who testified at the hearing, the ALJ refers to
psychiatrist Richard Cohen, who testified at the hearing with respect to plaintiff's mental health.
(R. at 623-37.)  He was not the State agency psychologist who evaluated plaintiff's mental health
RFC in Exhibit 15F. (R. at 300-14.)

(R. at 27-28.)  In this case, the ALJ erred when she improperly rejected the records of plaintiff's treating physician, Dr. Attanasio, and then substituted her own opinions regarding plaintiff's RFC to perform physical work-related activities.  In his assessment of plaintiff's physical RFC, Dr. Attanasio found that the plaintiff could only occasionally lift and carry less than ten pounds. (R. at 344.)  Given his assessment of plaintiff's ability to lift and carry, Dr. Attanasio concluded that the plaintiff was not capable of light work.

A treating physician's assessment is generally given deference.  20 C.F.R. § 404.1527(d)(2).  Indeed, an ALJ is required to give a treating physician's opinion "controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  Id. Furthermore, the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence.  Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).  See also Sherrod v. Barnhart, 2002 WL 32350551 at *5 (E.D. Pa. July 31, 2002).  Further, "an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence."  Plummer, 186 F.3d at 429.  However, an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."  Id. (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).  In doing so, the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant.  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

In this case, the ALJ failed to point to an opinion submitted by another medical source which contradicts the medical opinions of Dr. Attanasio regarding plaintiff's physical

impairments.[6]  See Allen, 881 F.2d 41-42 (treating physicians' opinions cannot be rejected unless ALJ points to other medical evidence of record).  It is the function of the ALJ to resolve conflicts in the evidence and determine the credibility and relevant weight given to the evidence. Richardson, 402 U.S. at 399; see Cotter, 642 F.2d at 705; Gober v. Matthews, 574 F.2d 772, 778 (3d Cir. 1978).

Therefore, the ALJ was also required to point to credible medical evidence to support her specific RFC findings.  See, e.g., Lauer v. Apfel, 245 F.3d 700, 703-04 (8th Cir. 2001) (even if ALJ "provided ample reasons for his decision not to adopt the opinions of [treating and consultative physicians]," the ALJ failed to point to medical evidence to support the ALJ's conclusion regarding claimant's mental RFC); Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and, therefore, the ALJ's conclusion that he could is not supported by substantial evidence."); Johnson v. Bowen, 699 F.Supp. 475, 484 (E.D. Pa. 1988) (finding that the ALJ erred where he concluded that the claimant retained the full range to perform sedentary work where the ALJ failed to point to medical evidence to support this conclusion).  Although the ALJ "bears primary responsibility for assessing a claimant's [RFC] based on all relevant evidence," a claimant's "RFC is a medical question."  Lauer, 245 F.3d at 703-04; see also Doak, 790 F.2d at 29; Johnson, 699 F. Supp. at 484.  Furthermore, the ALJ may not make speculative inferences from the medical evidence, see Plummer, 186 F.3d at 429, and

---

[6]  Moreover, the physical RFC form completed by Dr. Rubenfeld, the medical examiner for the Pennsylvania Bureau of Disability Determination, supports Dr. Attanasio's findings with regard to plaintiff's ability to lift and carry.  He found that plaintiff could only occasionally lift and carry two to thee pounds.  (R. at 288.)  Additionally, the ALJ failed to point to any medical evidence contradicting the findings of Dr. Rubenfeld.

an ALJ's RFC finding must state the claimant's impairments "with precision," see Miller v.

Barnhart, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002).

In the present case, the ALJ made the following finding with respect to plaintiff's RFC:

"The claimant has the [RFC] to perform a significant range of light work (20 CFR § 416.917)."

(R. at 30.)  However, since the ALJ failed to point to credible medial evidence indicating the

ALJ's RFC finding adequately described plaintiff's specific limitations, it cannot be said the

ALJ's RFC finding is supported by substantial evidence, and the case should be remanded for

further consideration. See e.g., Lauer, 245 F.3d at 703-04; see also Doak, 790 F.2d at 29;

Johnson, 699 F. Supp. At 484.  In summary, it was improper for the ALJ to reject the medical

opinion of Dr. Attanasio because he was not "an orthopedist, a neurologist, or a physiatrist."  See

(R. At 28.).

It is also noted that "the ALJ has a 'duty to develop a full and fair record . . . [and] must

secure relevant information regarding a claimant's entitlement to social security benefits."

Matusavage v. Apfel, 1999 WL 681698, at *4 n.3 (E.D. Pa. Sept. 1, 1999) (quoting Ventura v.

Shalala, 55 F.3d 900, 902 (3d Cir. 1995))); see Schwartz v. Halter, 134 F. Supp.2d 640, 656

(E.D. Pa. Mar. 8, 2001). Indeed, a "duty exists even when the claimant is represented by counsel,

because an administrative hearing is not an adversarial proceeding."  Schwartz, 134 F. Supp.2d at

656 (citing Dobrowlosky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)) see Matusavage, 1999

WL 681698, at *4 n.3 (quoting Ventura, 55 F.3d at 902).  As the Third Circuit pointed out,

"[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent

purposes of the legislation requires that a more tolerant standard be used in this administrative

proceeding than is applicable in a typical suit in a court of record where the adversary system

prevails."  Ventura, 55 F.3d at 902.  Accordingly, on remand, upon reevaluation of the evidence,

if the ALJ finds that the medical documentation submitted is unclear, or that he is lacking

information critical to the disability determination, the ALJ has a duty to develop the record.  See

Thomas v. Chater, 1997 WL 256458, at *3 (3d Cir. May 9, 1997) (if medical information

submitted is unclear or the record is lacking information critical to the disability determination,

the ALJ has the duty to develop the record); Roe v. Massanari, 2002 WL 59093, at *15 (D. Neb.

Jan. 16, 2002) (remanding the case for reevaluation of the RFC where aLJ failed to develop

record regarding physician' opinions of plaintiff's RFC).

It is further noted that "[i]n assessing the RFC, the ALJ **must** discuss the individual's

ability to perform sustained work activities in an ordinary work setting **on a regular and

continuing basis (i.e. 8 hours a day, for 5 hours a week, or an equivalent work schedule)."**

SSR 96-9p, 61 Fed. Reg. 34,474, 34.478 (1996) (emphasis added) (footnote omitted); see

Wallace v. Apfel, 1998 WL 967376, at *4 (E.D. Pa. Nov. 24, 1998) (remanding case for further

consideration of plaintiff's RFC because the ALJ failed to apply standard set out in SSR 96-8p

and SSR 96-9p); see also 20 C.F.R. §§ 404.1545(b), 416.945(b); Kangas v. Bowen, 823 F.2d

775, 777 (3d Cir. 1987); Nance v. Barnhart, 194 F. Supp.2d 302, 319 (D. Del. 2002).  Here, to

the extent that the ALJ made a finding that plaintiff had a sufficient RFC to perform her past

relevant work, it appears that the ALJ failed to discuss the specific issue of whether plaintiff had

the ability to perform sustained work activities on a regular and continuing basis.

Thus, the ALJ erred when she improperly determined that plaintiff was capable of light

work.

**-6-   CONCLUSION**

Under the fourth sentence of 42 U.S.C. § 405(g): "The [district] court shall have power to

enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g)

("Judicial review"); see Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).

Since it is the function of the ALJ, not the reviewing courts, to weigh the evidence, see

Fargnoli, 247 F.3d at 42, a remand is warranted to give the ALJ a further opportunity to take

additional evidence and to properly evaluate all of the evidence of record.  See Cotter, 642 F.2d

at 707; see also Walton, 243 F.3d at 709.

On remand, after reviewing all of the evidence, the ALJ must provide a proper

explanation in support of her determination of plaintiff's residual functional capacity.  In light of

the subsequent review of the evidence, the ALJ should reconsider his determination of the

plaintiff's residual functional capacity to determine if it still applies.  In addition, the ALJ will

have the opportunity to revisit her determination that plaintiff was not wholly credible with

respect to her subjective complaints.

Having concluded that the case should be remanded for further analysis of the evidence

**prior** to the ALJ's determination of sequential evaluation, it is unnecessary to reach plaintiff's

contention that the ALJ erred by posing inadequate hypothetical questions to the VE.  See, e.g.,

Slayton v. Apfel, 1999 WL 152614, at *4 (May 22, 1999).  The ALJ's further evaluation of the

evidence on remand may affect his analysis at step 5.  Of course, on remand, the ALJ should

confirm that no conflict exists between the testimony of the vocational expert ("VE") regarding

the of jobs available in the national and local economies that plaintiff has the ability to perform

and the descriptions of those jobs as contained in the Dictionary of Occupational Titles.  <u>See</u> SSR

00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000) ("[O]ccupational evidence provided by a VE generally

should be consistent with the occupational information supplied by the [DOT].") <u>See also</u> <u>Diehl</u>

<u>v. Barnhart</u>, 357 F.Supp.2d 804, 820 (E.D. Pa. Feb. 7, 2005).  Additionally, on remand, the ALJ

should reevaluate plaintiff's claim that the Commission erred by finding that plaintiff was not

under a "disability" as defined by the Act.  <u>See</u> <u>supra</u> at 4.

Accordingly, plaintiff's motion for summary judgment should be granted insofar as she

requests a remand, defendant Commissioner's motion should be denied, and the case should be

remanded to the Commissioner for further proceedings consistent with this Report and

Recommendation.  Since the remand would be pursuant to sentence four of 42 U.S.C. § 405(g),

the final decision of the Commissioner denying benefits to Plaintiff should be reversed with a

remand, and a judgment to that effect should be formally set forth "on a separate document,"

pursuant to Federal Rule of Civil Procedure 58.  <u>See</u> <u>Kadelski v. Sullivan</u>, 30 F.3d 399, 402 (3d

Cir. 1994); <u>see also</u> <u>Shalala v. Schaefer</u>, 509 U.S. 292, 297-98 (1993).

My Recommendation follows.

**RECOMMENDATION**

AND NOW, this 14th day of May, 2007, upon consideration of the cross-motions for summary judgment, for the reasons given in the accompanying Report, it is hereby RECOMMENDED that Plaintiff's Motion for Summary Judgment be GRANTED insofar as Plaintiff requests a remand, Defendant Commissioner's Motion for Summary Judgment be DENIED, and that the case be REMANDED to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.  A Judgment REVERSING the Commissioner's final decision with a REMAND should therefore be entered.

_____
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE